John L. **JORGENSEN**, Plaintiff–Appellant,

v.

**EPIC/SONY RECORDS, Famous Music Corporation, Fox Film Music Corporation, Careers BMG Music Publishing, Blue Sky Rider Songs, Warner–Tamerlane Publishing Corporation, Songs of Nashville Dreamworks, Defendants–Appellees.**

Docket No. 02–9305.

United States Court of Appeals, Second Circuit.

Argued: May 19, 2003.

Decided: Dec. 3, 2003.

John L. Jorgensen, pro se, Brooklyn, New York, for Plaintiff–Appellant.

Orin Snyder (Cynthia S. Arato, on the brief), Parcher, Hayes, & Snyder, P.C., New York, New York, for Defendants–Appellees Careers BMG Music Publishing Inc., Songs of Nashville Dreamworks, Sony Music Entertainment Inc., and Warner–Tamerlane Publishing Corporation.

Jonathan Zavin, Loeb & Loeb, LLP, New York, New York, for Defendants-Appellees Famous Music Corporation, Fox Film Music Corporation, and Blue Sky Rider Songs.

Before: KEARSE, STRAUB, and RAGGI, Circuit Judges.

STRAUB, Circuit Judge.

Plaintiff John L. Jorgensen ("Jorgensen"), *pro se,* appeals from the judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge*), dated September 27, 2002, granting the defendants' motion for summary judgment and dismissing Jorgensen's copyright infringement case in its entirety. The District Court found that Jorgensen had not presented sufficient evidence of access to support his claim of copyright infringement, i.e., Jorgensen had not shown a reasonable opportunity by the allegedly infringing songwriters to hear and copy Jorgensen's unpublished song. *See Jorgensen v. Epic/Sony Records,* No. 00 Civ. 9181, 2002 WL 31119377 (S.D.N.Y. Sept.24, 2002).

We agree with the District Court that evidence of corporate receipt of unsolicited work is insufficient to raise a triable issue of access where there is no evidence of any connection between the individual recipients of the protected work and the alleged infringers. As to Defendants Careers BMG Music Publishing, Songs of Nashville Dreamworks, and Warner–Tamerlane Publishing Corp., Jorgensen failed to introduce evidence of any such nexus; indeed, those defendants introduced uncontroverted evidence to the contrary. As such, we affirm the District Court's ruling that Jorgensen failed to raise a triable issue of access as to those defendants.

With respect to Defendants Famous Music Corporation, Fox Film Music Corp., Blue Sky Rider Songs, and Sony Music Entertainment Inc. (improperly sued as Epic/Sony Records), however, we find that Jorgensen did proffer sufficient evidence of a connection between the recipients of his recordings and the alleged infringers to make the grant of summary judgment on the issue of access inappropriate at this stage of the proceedings. We therefore vacate the judgment of the District Court as to Defendants Famous Music Corporation, Fox Film Music Corp., Blue Sky Rider Songs, and Sony Music Entertainment Inc. and remand the case for further proceedings.

## BACKGROUND

Jorgensen, a musician and songwriter, wrote and copyrighted a song entitled "Long Lost Lover" ("Lover") that he claims has been infringed upon by the songs "My Heart Will Go On" ("Heart") and "Amazed." Written by James Horner and Will Jennings, and sung by Celine Dion, "Heart" was the Academy Award-winning theme song for the 1997 blockbuster movie *Titanic.* Defendants Famous Music Corporation, Fox Film Music Corp. and Blue Sky Rider Songs are the three co-publishers of "Heart," and Defendant Sony Music Entertainment Inc. ("Sony") manufactured and distributed the *Titanic* soundtrack.[1] These defendants are collectively referred to as 'the "Heart" defendants' in this opinion.

"Amazed," a song written by Chris Lindsey, Aimee Mayo and Marv Green, was recorded by the country music group Lonestar and released on their multi-plati-

---

1. Jorgensen has not introduced sufficient evidence to support his suggestion that Sony— listed on the Form SR 248–234 as the "author" of "Heart" for purposes of ownership of the copyright—was the actual creator of "Heart."

num album "Lonely Grill." Defendants Careers BMG Music Publishing ("BMG"), Songs of Nashville Dreamworks, and Warner–Tamerlane Publishing Corp. (collectively 'the "Amazed" defendants') are music publishing companies that administer the publishing rights to "Amazed."

Jorgensen asserts two primary theories by which he hypothesizes that the writers of "Heart" and "Amazed" had access to, and copied his song, "Lover": (i) through his unsolicited mass mailings of "Lover" to a multitude of entertainment companies listed in industry songwriter market books, including the defendants; and (ii) through actual receipt of his mailings by two executives at two of the defendant companies, BMG and Sony.[2] Jorgensen has not named the writers of either song as defendants in this suit.

After discovery, the defendants moved for summary judgment on the ground that Jorgensen had failed to adduce any evidence to support these theories of access. In particular, the defendants argued that, with the two exceptions noted below, Jorgensen had made no showing that any of the defendants ever actually received his submission. Even where Jorgensen established actual receipt, the defendants asserted that there was no evidence that Jorgensen's song had been forwarded to the writers of "Amazed" or "Heart," or to any other third party. In addition, the defendants argued that Jorgensen never had any contact with the writers of either "Amazed" or "Heart," and that Jorgensen had no evidence that the writers of either song would ever have received any tapes of unsolicited material from any of the

companies to which Jorgensen sent copies of "Lover."

Bruce Pollock, a managing producer at a BMG division that has no connection with the music publishing company, submitted a sworn declaration in which he admitted having received a compact disc copy of "Lover" from Jorgensen. Pollock stated, however, that he did not give the CD to anyone at any time, including the writers of "Amazed" whom he did not know and had never met.

Harvey Leeds, a Vice President at Sony responsible for reviewing touring budgets for Sony artists, also admitted during his deposition that he had received a few tapes from Jorgensen but stated that he did not listen to them, and had assumed they were thrown away. Leeds also testified that he did not know the "Heart" songwriters.

Based on this evidence from Pollock and Leeds and because Jorgensen did not produce any cover letters or other correspondence to the defendants indicating to whom (or when) he sent his other mailings of "Lover," the District Court held that Jorgensen could not establish that the authors of either "Amazed" or "Heart" had a reasonable opportunity to hear his unpublished work. 2002 WL 31119377, at *4 ("Without more proof of access than has been demonstrated, Jorgensen's case cannot proceed."). The court held that "bare corporate receipt" of Jorgensen's work by those defendants who may have received Jorgensen's mass mailings did "not create a prima facie case of access sufficient to defeat summary judgment." *Id.* at *3. And, according to the District Court, with

---

**2.** Jorgensen also posits a third theory of access involving Dan Huff, a Nashville musician and producer. According to Jorgensen, Huff may have played a central role in these alleged infringements "because of his association and affiliations with Nashville writers, musicians, and publishing companies." The

District Court, noting that Jorgensen admitted that "he has never met, spoken to or sent music to Huff," rejected as unsubstantiated Jorgensen's theory of access via an alleged "Huff conspiracy," 2002 WL 31119377, at *4–5, as do we.

respect to BMG and Sony, the fact·that Pollock and Leeds, respectively, admitted receiving Jorgensen's songs, without further evidence that they had forwarded the tapes to the songwriters or anyone else, was similarly inadequate to show access. *See id.* at *4.

The District Court's summary of the evidence regarding Jorgensen's interactions with Leeds and Sony, however, was incomplete. During his deposition, Jorgensen testified at length about multiple conversations that he'd had with both Leeds and Leeds's assistants over the course of three or more years regarding several tapes that Jorgensen sent to Leeds, including at least one tape that contained a recording of "Lover." According to Jorgensen, during every one of these conversations, Leeds or his assistants confirmed that Leeds had received Jorgensen's tapes (including, in particular, the "Lover" tape) and told Jorgensen that his tapes had been forwarded to Sony's Artist and Repertoire ("A & R") Department, the department responsible for helping the company "find, sign and guide new talent." In addition, in response to Jorgensen's Requests for Admissions, Sony indicated that "on limited occasions, writers, producers or musicians affiliated with Sony may have been shown some material solicited by the A & R Dept. at some point during 1995, 1996 and 1997 ...." This

evidence—which the District Court does not appear to have considered—undercuts the defendants' claim that "Jorgensen failed to adduce even a scintilla of evidence" that Leeds "provided [Jorgensen's] song to anyone else ...."

## DISCUSSION

We review the District Court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to Jorgensen, the non-moving party. *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 119 (2d Cir.2003). Moreover, because Jorgensen is proceeding *pro se*, we read his pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citation and internal quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). As the District Court observed, however, our "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." 2002 WL 31119377, at *2.[3]

To prevail on a motion for summary judgment, the defendants must demonstrate the absence of material evidence supporting an essential element of Jorgensen's copyright infringement claim. *See*

3. Although it is not clear from the record whether the District Court or the defendants ever explicitly advised Jorgensen of the "nature and consequences of a summary judgment motion," *see Vital v. Interfaith Med. Center*, 168 F.3d 615, 620–21 (2d Cir.1999), Jorgensen's submissions to the District Court make clear that he understood the significance of the defendants' motion and what was required of him in opposing that motion. In his brief, he asserted that summary judgment would be "improper in this case because there are genuine issues of material fact on each element of plaintiff's cause of action," and in his brief and the Rule 56.1 Statement that he submitted, he carefully marshaled the evidence in support of his theories of access. *See Sawyer v. Am. Fed'n of Gov't Employees*, 180 F.3d 31, 34–35 (2d Cir. 1999) (recognizing an exception to the obligation outlined in *Vital* where "the *pro se* litigant responds to the summary judgment motion with factual and legal submissions indicating that he understood the nature and consequences of summary judgment and the need to set forth all available evidence demonstrating a genuine dispute over material facts" (citation and internal quotation marks omitted)); *Vital*, 168 F.3d at 621.

*Repp v. Webber,* 132 F.3d 882, 889–90 (2d Cir.1997), *cert. denied,* 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). Jorgensen, to avoid summary judgment, "may not rely simply on conclusory allegations or speculation ..., but instead must offer evidence to show that [his] version of the events is not wholly fanciful." *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999) (citation and internal quotation marks omitted).

■ In a copyright infringement case, the plaintiff must show: (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998). A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright. *See* 17 U.S.C. § 410(c). Jorgensen secured such registration for "Lover," and the defendants do not dispute the validity of that copyright. Thus, Jorgensen has met the first element of an infringement claim.

■ To satisfy the second element of an infringement claim—the "unauthorized copying" element—a plaintiff must show both that his work was "actually copied" and that the portion copied amounts to an "improper or unlawful appropriation." *Castle Rock,* 150 F.3d at 137 (citation and internal quotation marks omitted). "Actual copying may be established by direct or indirect evidence." *Boisson v. Banian, Ltd.,* 273 F.3d 262, 267 (2d Cir.2001). Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially "by demonstrating that the person who composed the defendant's work had access to the copyrighted material," *Herzog v. Castle Rock Entm't,* 193

F.3d 1241, 1249 (11th Cir.1999); *see also Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986), and that there are similarities between the two works that are "probative of copying," *Repp,* 132 F.3d at 889.

### A. *Jorgensen's evidence of access*

■ Access means that an alleged infringer had a "reasonable possibility"—not simply a "bare possibility"—of hearing the prior work; access cannot be based on mere "speculation or conjecture." *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir. 1988); *see also Herzog,* 193 F.3d at 1250; *Grubb v. KMS Patriots, L.P.,* 88 F.3d 1, 3 (1st Cir.1996); *Ellis v. Diffie,* 177 F.3d 503, 506–07 (6th Cir.1999); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.02[A], at 13–19 to 13–20 (2002) ("[R]easonable opportunity ... does not encompass any bare possibility in the sense that anything is possible. Access may not be inferred through mere speculation or conjecture."); *but cf. id.* at § 13.02[A], at 13–22 (noting that "[a]t times, distinguishing a 'bare' possibility from a 'reasonable' possibility will present a close question"). In order to support a claim of access, a plaintiff must offer "significant, affirmative and probative evidence." *Scott v. Paramount Pictures Corp.,* 449 F.Supp. 518, 520 (D.D.C.1978), *aff'd,* 607 F.2d 494 (D.C.Cir.1979) (table), *cert. denied,* 449 U.S. 849, 101 S.Ct. 137, 66 L.Ed.2d 60 (1980); *see also Tisi v. Patrick,* 97 F.Supp.2d 539, 547 (S.D.N.Y.2000).

#### 1. The mass mailings of "Lover"

Jorgensen argues, first, that his act of mailing unsolicited tapes of "Lover" to scores of record and music publishing companies, including the corporate defendants, constituted access because the corporate employees who allegedly received the mail-

ing could have provided the "Heart" and "Amazed" songwriters with a copy of "Lover." With two exceptions reviewed below, however, Jorgensen has not provided *any* reasonable documentation that he actually mailed such tapes (or when or to whom these tapes were purportedly sent). Jorgensen's mass-mailing allegation was, thus, properly rejected by the District Court as legally insufficient proof of access. 2002 WL 31119377, at *5 (noting that Jorgensen "did not maintain a log of where and when he sent his work, or keep receipts from certified mailings to establish a chain of access"); *see also Dimmie v. Carey*, 88 F.Supp.2d 142, 146 (S.D.N.Y. 2000) (rejecting plaintiff's claim that the mailing of tapes to a corporation could "be equated with access" where there was no evidence that the tapes were ever received or forwarded to the alleged infringers); *Jorgensen v. Careers BMG Music Publ'g*, No. 01 Civ. 0357, 2002 WL 1492123, at *4–5 (S.D.N.Y. July 11, 2002) (Preska, *J.*) ("*Jorgensen I* ").[4]

## 2. The submissions to Pollock and Leeds

Jorgensen's second and more narrow theory of access, predicated on Pollock's and Leeds's admissions that they received Jorgensen's submissions, was also rejected by the District Court. 2002 WL 31119377, at *4–5. For the reasons outlined below, we agree with the District Court that Jorgensen's speculation that Pollock could have provided the "Amazed" songwriters with a copy of "Lover" did not, standing alone, suffice to prove access, where there was no evidence of any relationship between Pollock and the songwriters and

where Pollock stated in his sworn declaration that he had never forwarded Jorgensen's tapes to anyone. With respect to Leeds and the "Heart" defendants, however, we find that Jorgensen introduced sufficient evidence to make the District Court's grant of summary judgment inappropriate at this stage of the proceedings.

### a. Pollock and the "Amazed" defendants

■ In his sworn declaration, Pollock stated that his job as a managing producer in BMG's Special Products division "has nothing to do with the publishing company, Careers BMG Music Publishing, Inc., or working creatively with songwriters at all." Although he conceded that he had received a CD recording of "Lover," Pollock denied that he had ever listened to the song and asserted that he never conveyed the CD "to anyone at any time," much less anyone who "contributed creative ideas or material" to "Amazed" or "Heart." *Meta–Film Assocs., Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1355–56 (C.D.Cal.1984); *see also Tisi*, 97 F.Supp.2d at 547–48 (finding no proof of access where plaintiff alleged that he sent unsolicited tapes to record companies, including the company that released records containing the allegedly infringing song, but there was no evidence that plaintiff's song was conveyed to anyone with creative input into the allegedly infringing song). In fact, Jorgensen conceded at his deposition that he had no knowledge that Pollock did anything with the CD that Jorgensen sent to him. Pollock stated that he did not have *any* relationship with the writers of "Amazed," and Jorgensen

---

4. In *Jorgensen I*, a separate action filed the same day as this action, Jorgensen alleged copyright infringement of another of his songs by Eric Clapton's Grammy Award-winning song, "Change the World." *Id.* at *1. The district court granted summary judgment for defendants, finding that Jorgensen's "evidence of access [wa]s speculative and/or legally insufficient [such that] no rational fact finder could find in favor of [him]." *Id.* at *5. Jorgensen has not appealed in *Jorgensen I*.

has submitted no evidence to the contrary. *Cf. Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir.1996) ("A court may infer that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a *close relationship* with the infringer. An intermediary will fall within this category, for example, if she supervises or works in the same department as the infringer or contributes creative ideas to him." (emphasis added)); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 944 (8th Cir.1992) (finding access where intermediary was "in a position to provide suggestions" to the alleged copiers); *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 354 (4th Cir.) (jury could infer access where intermediary with access to plaintiff's drawings had "a close relationship to the alleged infringers"), *cert. denied*, 532 U.S. 1038, 121 S.Ct. 2000, 149 L.Ed.2d 1003 (2001); *Tomasini v. Walt Disney Co.*, 84 F.Supp.2d 516, 522 (S.D.N.Y.2000) (finding no relationship between recipient of plaintiff's work and alleged infringers).

Jorgensen's claim against the "Amazed" defendants was properly dismissed because he has not offered any evidence to rebut Pollock's assertions. The most that Jorgensen offers to show a nexus between Pollock and the "Amazed" songwriters is his global assertion that "anything and everything can very well happen." Such speculation does not give rise to a triable issue of access. *See Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978) (holding that plaintiff's mere speculation did not support a finding of access where defendant offered uncontroverted evidence of a lack of access); *Towler*, 76 F.3d at 582–83; *Segal v. Paramount Pictures*, 841 F.Supp. 146, 150 (E.D.Pa.1993), *aff'd*, 37 F.3d 1488 (3d Cir.1994) (table); *Novak v. Nat'l Broad. Co.*, 752 F.Supp. 164, 169 (S.D.N.Y.1990); *Meta–Film*, 586 F.Supp. at 1355 (plaintiff's "tort[u]ous chain of hypothetical transmittals" was "insufficient to avoid summary judgment on the question of access"). Jorgensen has not adduced proof of a reasonable possibility that "the paths of [the "Amazed" songwriters] and the infringed work crossed." *Towler*, 76 F.3d at 582. Bare corporate receipt of Jorgensen's work, without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access.[5] *See Jorgensen I*, 2002 WL 1492123, at *4– 5; *Dimmie*, 88 F.Supp.2d at 146–47; *Tisi*, 97 F.Supp.2d at 547–48.

---

**5.** Over thirty years ago, the court in *Bevan v. Columbia Broad. Sys., Inc.*, 329 F.Supp. 601 (S.D.N.Y.1971), interpreting a then-recent First Circuit decision in *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir.1967), observed that "receipt of a manuscript at defendants' principal corporate office has been held sufficient to raise a triable issue [of access], despite plaintiff's inability to show receipt by the responsible employee." 329 F.Supp. at 609. Despite the fact that the evidence introduced in *Bevan* appears to have included much more than "bare corporate receipt" of the plaintiff's work, *see* 329 F.Supp. at 603–04, 609, courts and commentators have cited *Bevan* as endorsing a "bare corporate receipt" doctrine that "allows a plaintiff to satisfy her burden as to access merely by showing that the company employing the alleged infringer received the work." Stacy Brown, Note, *The Corporate Receipt Conundrum: Establishing Access in Copyright Infringement Actions*, 77 MINN. L. REV. 1409, 1411 (1993) (noting that this is not widely accepted); *see also, e.g., Dimmie*, 88 F.Supp.2d at 147 (characterizing *Bevan* as "(arguably) out-dated") (collecting cases); *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F.Supp. 1204, 1213 (E.D.N.Y.1981) (describing *Bevan*'s " 'generous' view of corporate access" and distinguishing *Bevan* on its facts); NIMMER ON COPYRIGHT, § 13.02[A], at 13–17 n. 13. Although the *Bevan* court seemed to anticipate that the Second Circuit would eventually adopt the bare corporate receipt rule outlined in *Morrissey*, *see Bevan* 329 F.Supp. at 609, we have not done so and we decline to do so today.

### b. Leeds and the "Heart" defendants

■ At his deposition, Leeds admitted that he had received tapes from Jorgensen but stated that he did not listen to them and he believed that they had been discarded. Leeds testified that his job as a Sony vice president involved reviewing promotional touring budgets and that he was "not involved in the A & R process." Leeds also stated that he did not know the "Heart" songwriters.

Citing this evidence (and echoing their arguments with respect to Pollock), the defendants assert that the mere fact that Leeds had received a copy of Jorgensen's song does not mean that the "Heart" songwriters had a reasonable opportunity to hear it. Defendants argue that it is "undisputed" that Leeds did not forward Jorgensen's tape to the "Heart" songwriters, but they do not address the evidence introduced by Jorgensen that Leeds and his assistants repeatedly told Jorgensen that his tapes—including, in particular, one containing the song "Lover"—were being sent to Sony's A & R department.[6] Leeds, at his deposition, disputed Jorgensen's version of events, testifying that he did not recall ever making such a promise to Jorgensen and that he likely threw Jorgensen's tapes away. Leeds also conceded, though, that it was possible that if there

was a tape that he received that he found interesting he might "pass it on" to one of his "friends in the A & R department."

To draw a connection between Sony's A & R department and Horner and Jennings, the creators of "Heart," Jorgensen relied on Sony's admission, in its response to his Request for Admissions, that during the relevant time period, "on limited occasions, writers, producers or musicians affiliated with Sony may have been shown some material solicited by the A & R Dept. . . . ." In concluding that Leeds "did not forward Jorgensen's package," the District Court made no mention of (i) Jorgensen's deposition testimony to the contrary or (ii) Sony's admission regarding the practices of its A & R Department.[7] 2002 WL 31119377, at *4.

Although the defendants accurately note that Jorgensen has put forth no evidence that the "Heart" songwriters *actually* heard his song, that argument misapprehends Jorgensen's burden. Jorgensen must show a "reasonable possibility of access" by the alleged infringer. *Dimmie,* 88 F.Supp.2d at 146 (citation and internal quotation marks omitted); *see also Herzog,* 193 F.3d at 1249 (explaining that to show access, a plaintiff must establish that the alleged infringer had "a reasonable

---

**6.** Indeed, in their submissions to the District Court, the "Heart" defendants incorrectly asserted that it was Leeds's "undisputed testimony" that "he never forwarded Jorgensen's package *anywhere* . . . ." (emphasis added).

**7.** On our review of the record, it appears likely that this evidence—both Jorgensen's deposition testimony and Sony's response to Jorgensen's Request for Admissions—would be admissible against the "Heart" defendants at a trial. However, since the parties did not address any evidentiary hurdles in their briefs to this Court and because we lack the benefit of the District Court's guidance on these issues, we leave their resolution to the District Court on remand.

We do note, however, that in their response to Jorgensen's Request for Admissions, after admitting that some unsolicited tapes were shared with Sony-affiliated artists, the "Heart" defendants denied that Jorgensen's material was either received by Sony's A & R Department or shown by that department to anyone else. Unlike the adjoining admission, that denial, however, is not admissible evidence because a party responding to Requests for Admission under Rule 36 of the Federal Rules of Civil Procedure may not rely upon his own answers to a Request for Admission as the basis for a summary judgment motion.

opportunity to view" his work (citation and internal quotation marks omitted)). He is not required to establish *actual* access. *See Bouchat,* 241 F.3d at 354–55 ("A copyright infringement plaintiff need not prove that the infringer *actually saw* the work in question; it is enough to prove that the infringer (or his intermediary) had the mere opportunity to see the work and that the subsequent material produced is substantially similar to the work.") (emphasis added).

The facts of Jorgensen's case against the "Heart" defendants are entirely distinguishable from those presented in *Dimmie,* upon which the defendants rely, where the district court found that the plaintiff had not introduced "a scintilla of evidence" that the corporate recipient of her tape had forwarded it to the alleged infringers. 88 F.Supp.2d at 146; *see also Novak,* 752 F.Supp. at 169. Jorgensen's evidence sets out a clear nexus between Leeds, who has admitted receiving the "Lover" tape and the Sony A & R department, to which Leeds told Jorgensen he'd forwarded the tape. In addition, Jorgensen elicited an admission that the Sony A & R department occasionally shares such material with "affiliated" songwriters. *Cf.*

*Bouchat,* 241 F.3d at 354 (noting that it was permissible for the jury to rest its access finding, in part, on the "standard office routines" of the defendant). What is not clear from the record before us is whether Horner and Jennings were songwriters "affiliated" with Sony in the period between when Jorgensen sent his tapes to Sony and when "Heart" was published. Absent some evidence on this issue, a jury could not reasonably infer simply from Sony's access to Jorgensen's work that Horner and Jennings also had such access. *See generally Towler,* 76 F.3d at 583 (refusing to find access where there was no evidence that intermediaries (who had access to plaintiff's screenplay) had contact with alleged infringer during the relevant time period).

As already noted, it is the defendant seeking summary judgment who must demonstrate a lack of evidence supporting an essential element of plaintiff's claim. *See Repp,* 132 F.3d at 890. The "Heart" defendants, who undoubtedly possess information about the time frame of Sony's affiliation with Horner and Jennings, failed to support their summary judgment motion with any evidence showing the lack of a relationship during the relevant period.[8]

8. The most that the "Heart" defendants offer to challenge the connection between Sony's A & R Department and the alleged infringers is defense counsel's claim in his affidavit that "[u]pon information and belief, neither Horner nor Jennings are associated as songwriters with Sony." (emphasis added). That supposition, however, is too tentative to qualify as evidence warranting summary judgment. *See* Fed.R.Civ.P. 56(e) ("Supporting ... affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *see also Dellacava v. Painters Pension Fund of Westchester and Putnam Counties,* 851 F.2d 22, 26 (2d Cir. 1988) (finding that assertion made " 'upon information and belief' ... could not have

been considered in the summary judgment motion") (citing *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed. 1312 (1950), *overruled in part on other grounds by Lear, Inc. v. Adkins,* 395 U.S. 653, 671, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969)).

This case is distinguishable from a number of the precedents cited herein because the "Heart" defendants apparently elected not to introduce sworn testimony from the songwriters themselves to show that they lacked access to Jorgensen's tapes. *See, e.g., Herzog,* 193 F.3d at 1245, 1255–56 (granting summary judgment for defendants, in part based on alleged infringer's testimony negating access); *Ferguson,* 584 F.2d at 113–14 (same); *Dimmie,* 88 F.Supp.2d at 144, 148–49 (alleged infringers' deposition testimony that

Because Jorgensen, appearing *pro se*, may not have appreciated the need to develop this particular evidence in discovery, summary judgment should not have been granted to defendants until the timing of any affiliation was clarified. Viewing the evidence adduced thus far in the light most favorable to Jorgensen and drawing all justifiable inferences in his favor, as we must at the summary judgment stage, *see Mack*, 326 F.3d at 119, we find that the District Court erred in granting summary judgment to the "Heart" defendants. Of course, it would be well within the District Court's discretion to permit limited discovery into the question of the timing of the songwriters' affiliation with Sony and to entertain a renewed motion for summary judgment, as may be appropriate.

B. *Jorgensen's claim of striking similarity*

As noted above, a copyright plaintiff's circumstantial proof of copying requires a showing of both access *and* probative similarity. *Repp*, 132 F.3d at 889; *Herzog*, 193 F.3d at 1249. In this case, the "Heart" defendants' summary judgment motion was based solely on the issue of access and did not address Jorgensen's claim of probative similarity between "Lover" and "Heart." As such, the District Court declined to address the question of probative similarity.

The District Court did, however, reject Jorgensen's last-minute argument that the allegedly infringing works, "Heart" and "Amazed," were so *strikingly* similar to "Lover" that Jorgensen need not prove access. 2002 WL 31119377, at *5. There is an inverse relationship between access and probative similarity such that "the stronger the proof of similarity, the less the proof of access is required." NIMMER ON COPYRIGHT, § 13.03[D], at 13–77. We have held that where the works in question are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995) (citation and internal quotation marks omitted); *see also Repp*, 132 F.3d at 889. Jorgensen offered nothing to support this allegation of a striking similarity,[9] however, and as the District Court properly concluded, Jorgensen's own statements—e.g., that the infringement of his song, Lover, was "subtle"—wholly undercut his claim of a "striking" similarity between the songs. 2002 WL 31119377, at *5.

## CONCLUSION

We have reviewed the record and considered all of Jorgensen's remaining contentions and find them to be without merit. We therefore AFFIRM the District

---

they did not review unsolicited material and, in particular, that they did not receive or review plaintiff's work considered by trial judge in granting summary judgment to defendants on the issue of access).

9. It is unclear whether Jorgensen is alleging that both "Amazed" and "Heart" are strikingly similar to "Lover" or if he is arguing that degree of similarity with respect to "Heart" alone. Notably, Jorgensen's expert, Judith Finnell, did not find either song to be *strikingly* similar to "Lover." Instead, she concluded that "Amazed" and "Lover" are *"substantially* similar in some of their primary elements"

and that " 'Heart' is *substantially* similar to key elements of 'Lover.' " (emphasis added). She noted, however, that the relationship between "Heart" and "Lover" "is subtle." The only other proof offered by Jorgensen that "Heart" and "Lover" are "strikingly similar" is his own conclusory statement to that effect in his amended report of his comparative analysis of the two songs. That conclusion, which contradicts his original report that "Heart" was a "subtle infringement" of "Lover," is insufficient to survive summary judgment.

Court's grant of summary judgment in favor of Defendants Careers BMG Music Publishing, Songs of Nashville Dreamworks, and Warner–Tamerlane Publishing Corporation. With respect to Defendants Famous Music Corporation, Fox Film Music Corporation, Blue Sky Rider Songs, and Sony Music Entertainment Inc., however, we VACATE the District Court's grant of summary judgment and remand the case for further proceedings not inconsistent with this opinion. Each party shall bear its own costs in regard to this appeal.