**Christina BAUER, Plaintiff,**

v.

**Linda YELLEN, Keckins Projects Ltd., Defendants.**

**No. 06 Civ. 15287(PKC).**

United States District Court,
S.D. New York.

April 22, 2008.

Christina Bauer, New York, NY, pro se.

Michael A. Cornman, Schweitzer Cornman Gross & Bondell LLP, New York, NY, for defendants.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge.

Plaintiff Christina Bauer, proceeding *pro se*, brings this action against Linda Yellen and Keckins Projects Ltd., ("Keckins"). Yellen is a producer, director and owner of Keckins, whose principal business is the development and production of motion pictures. Plaintiff alleges that defendants' development, promotion and production of a script entitled "The Hive" infringed her copyright in a script entitled "A Rose Is a Rose Is a Rose." With discovery now closed, defendants jointly move for summary judgment on plaintiff's claim and for attorney's fees. Defendant has served the requisite Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment required by Local Rule 56.2.

For the reasons set forth below, defendants' summary judgment motion is granted. The motion for attorneys' fees is also granted.

## I. *Background*

In addressing defendants' motion, I have considered only plaintiff's version of the facts and such other facts as are not disputed by plaintiff. Where multiple inferences may be drawn from the facts, I have considered only the inference most favorable to plaintiff, as the non-movant.

From 2001 to 2002, Yellen and her colleague, Michael Leeds, deposited five files titled, "The Hive," with the Writers Guild of America ("WGA"), which is an organization that accepts materials from artists " 'to assist [them] in documenting the creation of their work.' " (Pl.Resp.¶¶ 2, 8.) A report about "The Hive," referring to the project as "scripted," appeared in Variety magazine on November 15, 2001. (*Id.* at ¶ 6.)

On May 20, 2003, plaintiff deposited with the WGA an unpublished script titled, "A Rose Is A Rose Is A Rose," (hereinafter referred to as "A Rose"). (Pl.Mem.1.) In 2006, plaintiff registered her work with the Library of Congress Copyright office. (*Id.*)

Plaintiff endeavored to interest Liz Smith, the well-known gossip columnist, in her script. (Pl. Mem. 8.) In or around August 2003, Yellen reviewed A Rose, as a favor to Smith, who is her friend. (*Id.* at 1.) Thereafter, in September 2003, Yellen had a telephone conversation with plaintiff, in which plaintiff pitched her script to Yellen. (*Id.*) The conversation "focused on two things a.) making this script hip to a young movie going audience and b.) having a 'concept' or gimmick to attract older, classic actors, like Olympia Dukakis or Judy Dench or even a Gena Rowlands." (*Id.* at 8.) Plaintiff told Yellen and Smith

that she "wanted to cast older actors and with either make-up or through digital technology (depending on financing) make their faces younger. And as the movie ... progressed over 30 years time, the actors would grow naturally into their own aged faces." (*Id.*) During the conversation between Yellen and plaintiff, Yellen did not mention The Hive, and she told plaintiff that she was not working on anything at the time. (Pl.Resp.¶ 10.)

On October 12, 2006, a column titled "Left Bank of Old" appeared in the New York Post, (the "NY Post Column"), under Smith's by-line. The column states, in relevant part:

PICTURE IT: Paris, 1912, the Left Bank, which was then a hotbed for art, fashion, sexual liberation and the latest controversial theories. In one dilapidated apartment complex lived five young men, struggling artists, all convinced of their own particular genius, all sharing ideas, women, hostilities, jealousies. Each would eventually become quite famous. They were the rock stars of their day, a moment in which Levi's were the hot American import, neon lights were beginning their gaudy transformation of Parisian boulevards. Tattoos and piercing were omnipresent. Coke—still laced with cocaine—was imbibed.

Those five artists were Picasso, Chagall, Rivera, Soutine and Modigliani! This true story has never been told. But it will be now, if producer/director/writer Linda Yellen has her way. Yellen ... has a fascinating script ready to go, titled "The Hive." James Franco and Gena Rowland are attached ....

Linda says, "No film has really been able to capture the energy and vitality of what it was like to live in the Left Bank then, to be young and ambitious and wildly sexual." ... (Apparently, MAC Cosmetics liked the script concept so much they agreed to create special face and body makeup for "The Hive.")

(Linda says,) "I certainly see 'The Hive' as a movie a young, modern audience could relate to. Those creative men and women of 1912 were the MTV generation of the early 20th century!"

(Comman Decl., Ex. 10.) After reading the N.Y. Post Column, plaintiff filed the complaint in this action, alleging that The Hive, as it is described in the N.Y. Post Column, infringes the copyright she holds on A Rose.

## II. *Discussion*

### A. *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004) (citations omitted).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and "may not rely merely on allegations or denials" of the facts asserted by the movant. Rule

56(e)(2). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (internal quotations and citations omitted); *accord Eastman Kodak Co. v. Image Technical Svcs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). In the absence of any disputed material fact, summary judgment is appropriate. *Id.* Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (noting that summary judgment should be granted if the evidence is "merely colorable" or "not significantly probative").

██ Courts review *pro se* pleadings carefully and liberally and interpret such pleadings "to raise the strongest arguments that they suggest." *See e.g., Green v. United States,* 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). This is especially true in the summary judgment context, where a pro se plaintiff's claims are sub-ject to a final dismissal. *See Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.") (citation omitted). Plaintiff's *pro se* status, while implicating a more liberal interpretation of her pleadings, does not excuse her from the burden of coming forward with "concrete evidence from which a reasonable juror could return a verdict" in her favor. *LaGrande v. Key Bank Nat'l Ass'n,* 393 F.Supp.2d 213, 219 (S.D.N.Y. 2005) (citation and internal quotation marks omitted); *see also Miller v. New York City Health & Hosp. Corp.,* 2004 WL 1907310 at \*9 (S.D.N.Y. Aug.25, 2004). In reviewing a motion for summary judgment, the court must conduct a search of the record, and grant or deny summary judgment as the record indicates. Rule 56(c); *New England Health Care Employees Union, District 1199, SEIU AFL–CIO v. Mount Sinai Hosp.,* 65 F.3d 1024, 1030 (2d Cir.1995); *Korea Life Ins. Co. v. Morgan Guar. Trust Co. of New York,* 269 F.Supp.2d 424, 446 (S.D.N.Y.2003).

## B. *Overview of Copyright Law*

██ The elements necessary to establish copyright infringement are well established. To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 51 (2d Cir.2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)); *Castle Rock Entm't. Inc. v. Carol Publ'g Grp., Inc.,* 150 F.3d 132, 137 (2d Cir.1998). For the purposes of this motion, defendants concede that plaintiff has a registered copyright for A Rose, (Def.Mem.5), and challenge only the second element of plaintiff's copyright claim.

In order to satisfy the second element of the infringement claim and prove unauthorized copying, "a plaintiff must show both that h[er] work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'" *Jorgensen*, 351 F.3d at 51 (quoting *Castle Rock*, 150 F.3d at 137). The first inquiry in the unauthorized copying analysis poses the purely factual question of whether the defendant "actually copied" plaintiffs work, and can be proved by direct or indirect evidence. *Id.* (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir.2001)). In cases lacking direct evidence of copying—such as this case indirect evidence will suffice if the "person who composed defendant's work had access to the copyrighted material, and ... there are similarities between the two works that are probative of copying." *Id.* (internal quotations and citations omitted). In other words, proof of access to the copyrighted work combined with the presence of similarities probative of copying are sufficient to permit a factfinder to draw the inference that the defendant "actually copied" from the plaintiff's work. Similarities between works are "probative of copying" if, "under all the circumstances, [they] make independent creation unlikely." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992) (internal quotations omitted); *see also Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F.Supp. 1328, 1337 (S.D.N.Y.1997) (similarities are "probative of copying" if they "would not be expected to arise if the works had been created independently"). The requirements of proof of access and the existence of probative similarities are inversely related in the sense that the greater the proof of access, the less striking the similarities must be in order for actual copying to be inferred. *Jorgensen*, 351 F.3d at 56.

The second inquiry in the "unauthorized copying" analysis looks to whether the actual copying that occurred amounted to an "improper or unlawful appropriation." The distinction between "actual copying" and "improper or unlawful appropriation" reflects the fact that "not all copying results in copyright infringement ...." *Boisson*, 273 F.3d at 268 (citing *Feist Publ'ns*, 499 U.S. at 361, 111 S.Ct. 1282). Essentially, the "actual copying" question concerns whether the defendant copied the plaintiff's work as a factual matter, and the "improper or unlawful appropriation" analysis explores whether the copying that occurred was of such a nature that copyright infringement may have taken place as a matter of law. *See id.* at 272.

For a plaintiff to show that improper appropriation has occurred, the accused work must exhibit "substantial similarities" to the plaintiff's work. *Id.* at 272. "Substantial similarity" must be "more than de minimis," *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir.2003), and the similarities must be of such a nature that "'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same,'" *Boisson*, 273 F.3d at 272 (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 765 (2d Cir.1991)).

C. *Analysis of Plaintiff's Infringement Claim*

Defendants challenge plaintiff's infringement claim on the grounds that plaintiff's evidence is insufficient to support an inference that Yellen actually copied A Rose, and that even if plaintiff's evidence can meet that threshold, no reasonable jury could conclude that The Hive is substantially similar to A Rose, and so improper appropriation cannot be proven.

I agree with defendants that there is insufficient evidence in the record to permit a reasonable factfinder to draw the inference that Yellen actually copied from the plaintiff's work. Thus, I need not reach the question of whether there is substantial similarity between the two scripts.

As discussed above, in order for indirect evidence to permit an inference of actual copying, plaintiff must present evidence that Yellen had access to A Rose and that The Hive possesses similarities to A Rose that are probative of copying. There is no evidence in the record from which a reasonably jury could conclude that Yellen had access to A Rose prior to the time Yellen and Leeds wrote The Hive. Defendants admit that Yellen reviewed plaintiff's script in 2003. (Yellen Aff. ¶ 8.) However, defendants assert that, prior to Yellen's review of plaintiff's script, the storyline for The Hive was conceived, committed to script form, registered in five different versions with the WGA, and shopped to more than one production company, and that it has not changed in any material way since its early iterations. (Yellen Aff. ¶¶ 2, 6–7, 12; Leeds Aff. ¶¶ 1–7, 10–11; Jorissen Aff. ¶ 2–4; Blum Aff. ¶¶ 3–8; Ferrara Aff. ¶¶ 3–5).

Plaintiff has responded to defendants' position, not with facts, but with conjecture, questioning the authenticity of virtually every piece of information provided by defendants throughout the course of this action. (*See, e.g.,* Pl. Resp. ¶¶ 1–2, 4–6, 8–11, 12–14 ("Bauer disputes the authenticity and provenance of all versions of the 'The Hive' offered as evidence by defendant ....").) Plaintiff does not dispute that Yellen and Leeds made five deposits of a "work" titled "The Hive" with the WGA in 2001–02, but she questions whether those deposits were actual scripts or merely "synops[e]s, outline[s], treatment[s] or idea[s]." (Pl.Resp.¶¶ 2, 8.) Plaintiff does

not believe that the five versions of The Hive scripts provided to her in discovery actually correspond to the WGA deposits, and complains that she was not provided with the identity of the person who wrote the WGA identifying number on each of the scripts. (Pl.Resp.¶ 8.) Nor does plaintiff believe that the sixth version of the script provided to her by defendants, which postdates the filing of this lawsuit, and which is similar in story line and content to the five prior versions, is the script that Yellen is "presently seeking financing for." (PL Mem. 4.)

Plaintiff has failed to meet the non-movant's burden to "set out specific facts showing a genuine issue for trial" on the issue of whether Yellen had access to plaintiff's work prior to writing The Hive. A party opposing summary judgment must come forward with more than mere speculation. Rule 56(e)(2); *Kulak*, 88 F.3d at 71: *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. 1348 ("When the moving party carries its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.")

As for the second prong of the "actual copying" analysis, plaintiff has not carried her burden of setting forth facts that would support a finding that there are probative similarities between the two scripts. Plaintiff admits that the storyline of her script is "very different" from the purported scripts of The Hive which have been provided to her, but, again, she questions the authenticity of those scripts, and bases her copyright claim on the description of The Hive that is set forth in the N.Y. Post Column. (Pl.Mem.5.) Plaintiff cannot rely solely on the synopsis of The Hive as written in the N.Y. Post Column, which is inadmissible hearsay, to establish copying. Rule 56(e)(1) ("opposing affidavit must ... set out facts that would be ad-

missible in evidence"); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir.1985) (citations omitted) (the non-moving party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial").

 Furthermore, even if the N.Y. Post column is treated as admissible evidence, and is considered for the truth of its contents, it is insufficient to raise a genuine issue of material facts requiring a trial, because it does not demonstrate any similarities between A Rose and The Hive that are probative of copying. Plaintiff states that she "recognizes her material when she sees it," (Pl.Resp.¶ 10), but that is not the standard. In order to establish actual copying, plaintiff must come forward with specific similarities between the two works which would not be expected to arise if the works had been created independently. *See Laureyssens,* 964 F.2d at 140.

Plaintiff does not dispute that The Hive, as it is described in the N.Y. Post Column, is a story about the artists Picasso, Soutine, Modiliani, Rivera and Chagall all living in Paris at the same time, in a tenement called "La Ruche." In an effort to downplay the differences between her script and defendants', plaintiff states that A Rose "is a story about artists and egos, success and failure, friendship, trust, and commitment and love." (Pl.Mem.6.) In response to defendants' assertion that A Rose is the story of Gertrued Stein and Alice B. Toklas as lovers, she states that she has "neither pitched nor promoted it as such." (*Id.*) Plaintiff's script is in the record on this motion, and, upon review, this Court concludes that, regardless of how plaintiff has chosen to promote it, Stein and Toklas are the main subjects of her work, and their relationship is a major component of the plot. The subtitle of plaintiff's script is "The Gertrude Stein Story." Stein or Toklas or both appear in every single scene. The story begins when Stein and Toklas meet and ends when Stein dies.

Plaintiff states, in her memorandum, "Let's suppose the Court was to replace the characters Chagall, Rivera, Soutine and Modiliani in the Smith/Ferrara column 'Left Bank of Old' with the plaintiffs [sic] characters mentioned on p. 16 of 'A Rose ...,' Matisse, Braque, Picabia and Gris; would the column 'Left Bank of Old' not describe the plaintiffs work in every other way?" (*Id.*) The Court has read the N.Y. Post Column in the way suggested by plaintiff and concludes that no reasonable jury could find that the N.Y. Post Column describes plaintiff's work "in every other way."

The fact that the two works might share some common general themes such as "artists and egos," and "success and failure," (*id.*), is not, without more, a probative similarity, because those themes are so commonplace that they are not unlikely to arise in independently-created works. Likewise, the facts that the two works both take place in Paris during the same time period and that both feature famous artists are common elements and do not raise an inference that copying occurred.

Plaintiff states that the column's descriptions of the artists as the " 'MTV generation' " and " 'rock stars of their day' " who "imbibe[ed] in drugs" is a "clear" reference to her conversation with Yellen, because plaintiff told Yellen that she wanted to "mak[e A Rose] hip to a young movie going audience" and because "Toklas was known for her hash brownies." (*Id.* at 8.) No reasonable jury could conclude that these similarities are probative of actual copying.

No genuine issue of material fact exists on whether the purported similarities between the works are probative of copying—they are not, and no reasonable jury could conclude otherwise. Plaintiff has failed to meet her burden of setting out specific facts showing that there is a genuine issue for trial on the question of whether actual copying occurred. For the foregoing reasons, defendants' motion for summary judgment is granted.

### D. *Attorney's Fees*

■ In a copyright action, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Factors which should be considered in employing the court's discretion to award attorney's fees include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (internal quotation marks and citations omitted). The Second Circuit has advised that the "objective unreasonableness" factor is to be accorded "substantial weight." *Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir.2001).

■ Here, I find that plaintiff's position in this action—that her "true story" of Stein and Toklas is "virtually identical" to defendants' story about Picasso, Soutine, Modiliani, Rivera and Chagall (Cmplt.¶ 16)—is objectively unreasonable for the reasons stated above, even taking into account plaintiff's *pro se* status.

Plaintiff's persistent preoccupation with collateral issues and frivolous discovery disputes is well-documented in the record. Plaintiff, without proper justification, failed to timely comply with several of the Court's Orders directing her to produce copies of her script for defendants' inspection. (*See* Order of May 2, 2007, Order of May 14, 2007, Ltr. Endorsement of May 17, 2007.) Plaintiff made unwarranted requests for an extension of the fact discovery period, including one on the day fact discovery was set to close. (*See* Ltr. Endorsement of June 29, 2007, Ltr. Endorsement of July 16, 2007.) Plaintiff sought testimony from an array of individuals who are unlikely to possess relevant non-cumulative information regarding her claims.

For these reasons, defendants' motion for reasonable attorney's fees is granted.

*Conclusion*

For the reasons outlined above, defendants' motion for summary judgment in their favor is GRANTED. Defendants' motion for reasonable attorney's fees is GRANTED. Defendants are instructed to submit their application for attorney's fees within twenty (20) days.

SO ORDERED.